***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commissions AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employee-employer relationship existed at the time of the alleged incident.
2. Channel Master was a duly qualified employer at the time of the alleged incident and was insured by CNA Risk Management/RSKCo.
3. The parties are subject to the North Carolina Workers' Compensation Act, the employer employing the requisite number of employees to be bound under the provisions of said Act at all relevant times.
4. Plaintiff's average weekly wage is to be determined by I.C. Form 22.
5. The alleged date of injury is April 1, 1997.
6. Plaintiff has not received any temporary total disability payments since April 1, 1997.
7. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of plaintiff's medical records.
8. The parties stipulated into evidence as Stipulated Exhibit 2, a Form 22 Wage Chart.
9. The parties stipulated into evidence as Stipulated Exhibit 3, a videotape purporting to be a video of plaintiff's job.
10. The parties stipulated into evidence as Stipulated Exhibit 4, plaintiff's deposition taken February 24, 2000.
11. The depositions of Robert Bylciw, M. D. and George Edwards, Jr., M.D. are a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the evidentiary hearing in this matter, plaintiff was fifty-three (53) years old. Plaintiff is a high school graduate whose work history includes clerical and factory work.
2. In November 1995, plaintiff became employed with defendant-employer Channel Master. Channel Master assembles satellite dishes and plaintiff worked on the assembly line. Plaintiff's job required her to work in seven different positions on the assembly line and those positions changed every two hours. Plaintiff's assembly job also had production requirements. The job video submitted into evidence as Stipulated Exhibit 3 accurately depicts the sequence of tasks that plaintiff performed in her job. However, the tasks on the videotape are performed at a slower rate than plaintiff would perform them on the assembly line.
3. On April 1, 1997, plaintiff fell and injured her right wrist while at work. Plaintiff was treated at Doctor's Urgent Care and was placed on light duty work for two weeks; thereafter, plaintiff continued to be treated conservatively by Doctor's Urgent Care.
4. Plaintiff continued to experience pain in her right wrist and on September 15, 1997 sought treatment from Dr. Robert Bylciw, an orthopedic surgeon. Dr. Bylciw diagnosed plaintiff with flexor tendonitis of the right wrist and treated her conservatively.
5. Plaintiff continued to experience right wrist pain and was referred by Dr. Bylciw to Dr. George Edwards, an orthopedic surgeon with a specialty in hands and upper extremities.
6. Plaintiff presented to Dr. Edwards on April 9, 1998, complaining of pain and numbness in her right wrist and hand. Dr. Edwards diagnosed plaintiff with work-related tendonitis in the right hand and wrist with some carpal tunnel syndrome, treated her conservatively, and instructed her to avoid prolonged periods of strenuous activity that aggravate her symptoms.
7. On July 1, 1998, plaintiff returned to Dr. Edwards complaining of right wrist pain and presenting with an incredibly strong Tinel's response. At that time, Dr. Edwards injected plaintiff's right carpal tunnel with cortisone to decompress the nerve chemically and take away most of the swelling in the tendons that surround the nerve that was causing her pain.
8. On plaintiff's July 17, 1998 visit with Dr. Edwards, she reported that she continued to experience the same problems with her hands and wrists and that she was unable to perform her work duties at defendant-employer Channel Master. At this visit, Dr. Edwards gave plaintiff a topical cortisone treatment and ordered nerve conduction velocity tests. Defendants Channel Master/CNA refused to immediately approve payment for the nerve conduction velocity tests, and plaintiff was unable to undergo these tests until they were finally approved one and one-half years later in January 2000.
10. In July 1998, defendant-employer Channel Master offered plaintiff light duty work as a marker. The marker position required plaintiff to use a pen weighing a few ounces to mark boxes. The marker job was only part of a regular job at defendant-employer Channel Master. Plaintiff attempted the marker job but said that it bothered her too much and refused to perform it.
11. Plaintiff remained out of work until November 15, 1998 when she became employed by the North Carolina State University (NCSU) Bookstore as a cashier. Plaintiff's job mainly involved dealing with videos and customer service, acting as a cashier, performing reservations and filing. Plaintiff's job at the NCSU Bookstore is not repetitive, does not involve awkward posture, force, contact stress or vibration and does not involve extreme temperature, humidity or light. Plaintiff's job at the NCSU Bookstore did not contribute to her flexor tendonitis and carpal tunnel syndrome.
12. When plaintiff became employed with NCSU Bookstore on November 15, 1998, she earned an average weekly wage of $240.00. On July 1, 1999, plaintiff's average weekly wage increased to $280.00, and in October 1999 plaintiff's average weekly wage increased to $300.00.
13. In January 2000, plaintiff returned to Dr. Edwards for nerve conduction studies which revealed a significant abnormality and indicated that plaintiff's carpal tunnel syndrome was fairly severe. Dr. Edwards scheduled plaintiff for a right carpal tunnel release in February 2000; however, the surgery was canceled as defendants Channel Master/CNA would not approve payment for it.
14. Plaintiff next returned to Dr. Edwards on August 3, 2001. At that time, plaintiff continued to complain of some pain but indicated that her numbness had improved and that she had occasional tingling. At that time, plaintiff's Tinel's response was not as severe as it had been before, her strength was good, and the Phalen's test was negative. On that date, Dr. Edwards was of the opinion that plaintiff's carpal tunnel syndrome was not severe enough to have abnormalities except for a slightly positive Tinel's response. Dr. Edwards was of the opinion that plaintiff suffered from bilateral wrist flexor tendonitis on the right side greater than the left side and carpal tunnel syndrome which was mostly, but not completely resolved. Dr. Edwards was of the opinion that plaintiff did not currently need surgery, but he also opined that there is a 90% chance that plaintiff will need surgery on her right wrist in the future.
15. Dr. Edwards was also of the opinion that plaintiff's work with defendant-employer Channel Master was repetitive enough and strenuous enough to significantly aggravate her carpal tunnel syndrome in that certain of her job duties performed for two hours could cause some aggravation of her tendonitis and secondarily aggravate her carpal tunnel syndrome.
16. Dr. Edwards was further of the opinion that certain of plaintiff's duties which she performed for two or three hours per day with defendant-employer Channel Master would place plaintiff at an increased risk for contracting flexor tendonitis and carpal tunnel syndrome than members of the general public not similarly employed.
17. On or about September 15, 1997, plaintiff contracted flexor tendonitis and carpal tunnel syndrome of the right wrist. Plaintiff's right-sided flexor tendonitis and carpal tunnel syndrome was proximately caused by her regular work duties during her employment with defendant-employer Channel Master. Plaintiff's job duties at defendant-employer Channel Master on the assembly line placed her at an increased risk of contracting right-sided flexor tendonitis and carpal tunnel syndrome than members of the general public not so employed. Plaintiff was last injuriously exposed to the hazards of right-sided flexor tendonitis and carpal tunnel syndrome during her employment with defendant-employer Channel Master. Plaintiff's employment with the NCSU Bookstore did not augment her pre-existing carpal tunnel condition.
18. As a direct and proximate result of her compensable occupational disease, plaintiff was unable to engage in activities required by her former job at defendant-employer Channel Master between July 17, 1998 and November 14, 1998.
19. Plaintiff has not reached maximum medical improvement.
20. As a direct and proximate result of her compensable occupational disease, plaintiff was unable to earn the same wages that she was earning in her former job and indeed earned a diminished wage beginning November 15, 1998.
21. At the time of the contraction of her compensable occupational disease, plaintiff earned an average weekly wage of $350.25, yielding a compensation rate of $233.51.
22. As a direct and proximate consequence of plaintiff's occupational disease, plaintiff is entitled to temporary total disability compensation from July 17, 1998 through and including November 14, 1998.
23. As a direct and proximate consequence of plaintiff's occupational disease, plaintiff is entitled to temporary partial disability compensation beginning November 15, 1998.
24. The treatment which plaintiff has received for her right-sided flexor tendonitis and carpal tunnel syndrome was reasonably designed to effect a cure, give relief, and lessen the period of disability.
25. There is a substantial risk that plaintiff will require future medical treatment for her compensable occupational disease.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On or about September 15, 1997, plaintiff contracted the occupational disease of flexor tendonitis and carpal tunnel syndrome of the right wrist. N.C.G.S. § 97-53(13).
2. As a direct and proximate result of her compensable occupational disease, plaintiff was unable to perform the duties required by her former job between July 17, 1998 and November 14, 1998, and is therefore entitled to receive temporary total disability compensation at the rate of $233.51 per week from July 17, 1998 through and including November 14, 1998. N.C.G.S. § 97-29.
3. As a direct and proximate result of her compensable occupational disease, plaintiff was unable to earn the same or greater wages that she was earning in her former job beginning November 15, 1998, and is therefore entitled to receive temporary partial disability compensation at the rate of $73.51 per week for the period from November 15, 1998 through and including June 30, 1999, at the rate of $46.83 from July 1, 1999 through and including September 30, 1999, and at the rate of $33.50 from October 1, 1999 and continuing until plaintiff earns the same or greater wages as prior to her injury up to a maximum of 300 weeks from the date of her injury. N.C.G.S. § 97-30.
4. The treatment which plaintiff has already received for her right-sided flexor tendonitis and carpal tunnel syndrome was reasonably designed to effect a cure, give relief and lessen the period of disability. N.C.G.S. § 97-25.
5. There is a substantial probability that plaintiff will require future medical treatment for her compensable occupational disease. N.C.G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For plaintiff's compensable occupational disease, defendants Channel Master/CNA shall pay to plaintiff temporary total disability compensation at the rate of $233.51 per week from July 17, 1998 through November 14, 1998. The amount which has accrued shall be paid in a lump sum subject to an attorney's fee contained in Paragraph 3.
2. For plaintiff's compensable occupational disease, defendants Channel Master/CNA shall pay temporary partial disability compensation to plaintiff at the rate of $73.51 per week for the period from November 15, 1998 through and including June 30, 1999, at the rate of $46.83 from July 1, 1999 through and including September 30, 1999 and at the rate of $33.50 from October 1, 1999 and continuing until plaintiff earns the same or greater wages as prior to her injury up to a maximum of 300 weeks from the date of her injury. The amount which has accrued shall be paid in a lump sum subject to an attorney's fee contained in Paragraph 3.
3. A reasonable attorney's fee of 25% of the compensation due under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid by defendants Channel Master/CNA by deducting from that sum and paid directly to plaintiff's counsel.
4. Defendants Channel Master/CNA shall pay for past and future medical expenses incurred by plaintiff as a result of her compensable occupational disease.
5. Defendants Channel Master/CNA shall pay the costs due the Commission.
This the ___ day of July 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER